## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| LINDA BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CV-515-HAB |
| | ) | |
| AVANCEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant fired Plaintiff after what it claimed was her second incident of threatening physical harm upon another individual in the workplace. Plaintiff disputes the claimed reasons for her firing, and instead alleges that she was discriminated against based on her age and disability. Now before the Court is Defendant's Motion for Summary Judgment (ECF No. 54). Plaintiff has filed her Response (ECF No. 65), and Defendant has filed a Reply (ECF No. 70).[1] This matter is now ripe for ruling.

**A. Factual Background**

Plaintiff is, as of the date of this Opinion and Order, a sixty-year-old African American female. Plaintiff served in the military from 1983 to 2000, when she was honorably discharged. Though she never saw combat, her military service was traumatic: she was sexually assaulted and exposed to racist abuse. As a result, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") both while she was in the military and after she was discharged. It is this PTSD diagnosis that is the predicate disability for her ADA claims.

---

[1] Plaintiff also filed a Motion to Correct Scrivener's Errors in her response memorandum (ECF No. 68), as well as an amended version of that filing (ECF No. 69). The purpose of the motion was to correct seven different typographical errors in the memorandum. There being no response in opposition, the motion (ECF No. 69) is GRANTED.

Defendant is an auto parts manufacturer located in Roanoke, Indiana. It appears that most, if not all, of Defendant's production goes to the nearby General Motors production facility. Relevant to this case, one of the parts produced by Defendant are vehicle consoles at Defendant's aptly named Console Line. The line has eight different stations and operates on three shifts per day.

Defendant uses the services of a temp agency, Aerotek, to help fill some of its staffing needs. Following a probationary period of ninety days, most temporary employees are hired on by Defendant. Upon being assigned to Defendant, Aerotek employees receive training and orientation on Defendant's production lines. Plaintiff attended Defendant's orientation/training in June 2018. During that orientation, Plaintiff alleges that one of Defendant's employees asked the class participants to state their age. Plaintiff complied. After training and orientation, Plaintiff was assigned to the third shift Console Line. While Plaintiff was the oldest employee on her shift of the Console Line, she was not the oldest employee to work the line for Defendant during calendar years 2018 and 2019.

The parties disagree as to the scope, but everyone agrees that Defendant had a practice of cross-training employees on multiple stations on the Console Line. According to Defendant, the ability to conduct training was based on staffing-related factors, most notably the availability of the trainer and the trainee. In addition, training could be interrupted if production levels did not keep up with GM's supply needs.

It was in this cross-training that Plaintiff first alleges discrimination. Plaintiff asserts that, from June 28, 2018, through October 31, 2018, she was denied the opportunity to train on all the stations because of her age. According to Plaintiff, she was told by her "team lead" that she was not being trained on the stations because "they said she is too old." There is no evidence in the

2

record as to who "they" were, and Plaintiff admits that she does not know. In any event, a supervisor heard the comment and said that Plaintiff needed to be trained on all stations so that she could rotate assignments per Defendant's company policy. Plaintiff reported this interaction to Defendant through an unsigned complaint filed with HR on October 29, 2018.

After this interaction, Plaintiff admits that she received training on all stations of the Console Line. At some point, although it is not clear from the evidence when, Plaintiff was evaluated to be mostly trained on six of the eight stations on the Console Line. At the time of this evaluation, Plaintiff's level of training was equal to, or higher than, most other employees on the third shift.

The undisputed evidence documents several run-ins between Plaintiff and her co-workers in early 2019. On January 13, 2019, Plaintiff filed a hostile work environment complaint asserting that a co-worker was hostile and verbally abusive, telling Plaintiff, "I'm not doing that shit." Plaintiff filed another hostile work environment complaint on February 1, 2019, alleging that a different co-worker was hostile and told Plaintiff, "fuck you." Neither co-worker received a written warning or were otherwise disciplined. Plaintiff also testified at her deposition that her co-workers made more than two, but less than ten, comments that Plaintiff was "old and slow."

Plaintiff met with Chad Pieper, Defendant's HR Manager, on February 7, 2019, to discuss her complaints. Also present at the meeting was Steve McGuire, Plaintiff's shift manager. Plaintiff objected to McGuire's presence at the meeting, but Pieper allowed McGuire to attend. Plaintiff disclosed her PTSD diagnosis during the meeting and advised, "I have PTSD and I can't help what might happen to you." Pieper perceived this as a threat to McGuire and said as much. Pieper prepared and issued a verbal warning to Plaintiff for making a threat. Plaintiff refused to sign the written form acknowledging the warning.

3

Following the warning, Plaintiff took her concerns to Defendant's CEO, writing a letter addressing Plaintiff's age discrimination complaint, the status of her PTSD diagnosis, as well as her claims of retaliation and harassment. As a result, Defendant's Director of Team Member Relations, Andrea Bouchard, interviewed Plaintiff on February 22, 2019. Plaintiff advised Bouchard of the difficulties Plaintiff was having in her job, including the threats and profanity used by Plaintiff's co-workers. Bouchard asked Plaintiff why she continued to work for Defendant if she was having such a poor experience. Plaintiff responded she liked her job.

On March 11, 2019, video showed Plaintiff bypassing error proofing protocols resulting in a faulty console being sent to GM. The video showed that Plaintiff was called over to a station where a co-worker could not get a part to scan. Plaintiff took the correct part from a shelf, scanned it, and put the correct part back on the shelf without replacing the incorrect part with the correct part on the console. GM notified Defendant of the faulty console and charged Defendant for the error. Plaintiff received a three-day suspension for bypassing quality control procedures and was told that any further violations of Defendant's policies would result in termination. Plaintiff did not sign the written notice of the suspension.

Plaintiff characterizes the video differently. She denies making any error. Instead, she claims that she relied on her co-worker to properly process the parts. Plaintiff notes that the co-worker was not disciplined in any way for the incident. Indeed, Plaintiff seems to question whether any error was made at all. She states that she asked Defendant to produce the "CSN Number," whatever that is, that would have verified an error. According to Plaintiff, no CSN number was ever produced. The same day she was suspended, Plaintiff emailed Bouchard to follow up on her prior discrimination complaints and to request that the "unjust suspension" be revoked.

May 9, 2019, marked another significant incident in Plaintiff's employment. A dispute arose among the assemblers on the Console Line regarding work assignments. Plaintiff and a co-worker engaged in a verbal dispute: Plaintiff claims the co-worker cursed at her; the co-worker claims that Plaintiff said, "we can take it outside." Plaintiff filed a complaint regarding the incident and McGuire, the shift manager, emailed management to ask that the co-worker be written up for her conduct.

As part of the investigation into the May 9 incident, Defendant's HR Administrator, Kathleen Marburger, interviewed Plaintiff. Also in attendance were union committee person Teresa Braden and union representative Todd McKibben. Both Marburger and Braden believed that Plaintiff threatened McKibben during the interview. While the exact words Plaintiff used are not clear from the record, it appears that Defendant believed Plaintiff said something to the effect that she could harm McKibben outside of the workplace. For his part, McKibben denies being threatened. Nonetheless, Marburger immediately suspended Plaintiff during the meeting.

During the suspension, Defendant reviewed its policies and procedures to determine the appropriate disciplinary step. Defendant ultimately terminated Plaintiff on May 24, 2019. The termination paperwork, which Plaintiff refused to sign, identified three grounds for termination: threats; conduct and attitude; and insubordination.

The UAW filed a grievance on behalf of Plaintiff over her termination. As part of its investigation into the grievance, the union was able to substantiate some of the stated grounds for the termination. The investigation revealed that Plaintiff did make the statement "I have PTSD and I can't help what might happen to you" in the February 7, 2019, meeting, and further that she made a threat to McKibben during the May 9, 2019, meeting. As a result of its investigation, the union elected not to pursue arbitration of the grievance.

**C.     Legal Analysis**

*1.     Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

2.    *ADA Discrimination*

The ADA prohibits employers from discriminating against a "qualified individual" based on her disability. 42 U.S.C. § 12112(a). To prove a claim of disability discrimination, a plaintiff "must show that: (1) [s]he is disabled; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by [her] disability." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (citing *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016)). The language of the ADA requires proof of "but for" causation. *See A.H. by Holzmueller v. Ill. High Sch. Assoc.*, 881 F.3d 587, 593 (7th Cir. 2018).[2]

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). Plaintiff has invoked this burden-shifting framework. (ECF No. 65 at 6).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination by showing that (1) she is disabled under the ADA; (2) she was meeting her

---

[2] While Congress amended the ADA in 2008 to prohibit discrimination "on the basis of" a disability, the Seventh Circuit continues to apply the but for causation standard it used under the pre-amendment language of the ADA, which prohibited discrimination "because of" an employee's disability. *See Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) ("Nearly 12 years later, it remains an open question in this circuit whether that change affects the 'but for' causation standard we apply in these cases." (citations omitted)); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1016 (the phrase "on the basis of" used in § 1981 is "strongly suggestive of a but-for causation standard"). Because neither side has asked this Court to proceed under a different standard considering the 2008 amendments to the ADA, the Court uses the traditional but-for standard.

employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Lloyd v. Swifty Transp., Inc*., 552 F.3d 594, 601 (7th Cir. 2009). Once a plaintiff has established a prima facie case, the defendant must identify a legitimate, non-discriminatory reason for its employment decision. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005). If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. *Lloyd*, 552 F.3d at 601.

In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also Liu v. Cook Cnty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

Defendant has conceded, for the purposes of summary judgment, that Plaintiff can demonstrate she is disabled under the ADA.[3] It is also undisputed that Plaintiff suffered an adverse employment action: the termination of her employment. With respect to the requirement that Plaintiff demonstrate she was meeting her employer's legitimate employment expectations, Defendant argues that Plaintiff was not qualified for her position because she lacked the ability to

---

[3] The Court has serious questions regarding whether Plaintiff was disabled under the ADA. The Court is not questioning Plaintiff's PTSD diagnosis nor belittling the disorder's effects. However, the record here is sparse with respect to how PTSD limited Plaintiff. She has submitted affidavits and other evidence indicating that she had good attendance, worked mandatory overtime whenever requested, and was eager to learn new job tasks. (*See* ECF No. 65-1 at 3). Plaintiff argues that she handled her "mental stress without incident." (ECF No. 65 at 10). Beyond noting the diagnosis, her mental health records are bereft of any information as to how PTSD has limited Plaintiff's major life activities. (ECF No. 60). Given that the Defendant has conceded this element at the summary judgment stage, the Court moves to the next step.

work cooperatively. Since Plaintiff's attitude was also a basis for termination, this is a case where the issue of legitimate employment expectations and pretext overlap. *See*, *e.g.*, *Everroad v. Scott Trust Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010). As such, the Court will consider this argument in addressing Plaintiff's claims of pretext.

At the pretext stage, the burden of production (not the burden of proof, which remains with the plaintiff throughout) shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging the employee. *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 400 (7th Cir. 1992); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08 (1993). The defendant's burden of producing evidence of a legitimate, non-discriminatory reason "is merely a burden of production . . . that is not difficult to satisfy," *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 463 (7th Cir. 1986), and if the employer does satisfy this burden, "the presumption [of discrimination] dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for . . . discrimination." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir. 1994).

Defendant has clearly met its burden of production, and Plaintiff does not argue otherwise. Defendant has identified three incidents of alleged threatening behavior by Plaintiff, two of which occurred in the presence of Defendant's management-level employees. These threats were grounds for immediate discharge under the collective bargaining agreement between Defendant and the UAW. (ECF No. 56-3 at 239–40). As it is in many employment discrimination claims, the matter will turn on the issue of pretext.

"Pretext means a dishonest explanation, a lie rather than an oddity or an error." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (internal quotations omitted) "Showing pretext requires [p]roof that the defendant's explanation is unworthy of credence." *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1063 (7th Cir. 2008) (internal quotations omitted). If the

employer honestly believed the reason it proffers for its employment decision, the reason was not pretextual. *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008).

Plaintiff asserts pretext for each purported ground for termination. For the most part, Plaintiff's "evidence" of pretext is little more than a disagreement with the stated bases for termination. However, the Court finds the evidence of pretext especially lacking with respect to Plaintiff's threats against McGuire on February 7, 2019, and McKibben on May 10, 2019. Plaintiff presents no evidence, or even argument, demonstrating that Defendant did not honestly believe that Plaintiff issued the alleged threats. Instead, Plaintiff claims that her words to McGuire were "not a threat" and that McKibben did not view Plaintiff's statement as a threat. (ECF No. 65 at 11, 13). While these facts might raise a genuine issue of fact as to whether threats were made, they add nothing to the pretext analysis. A reason for termination is not pretextual if it is honestly believed by an employer, even if the reason is "foolish or trivial or even baseless." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) (quoting *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997)). Any argument "about the accuracy of the employer's assessment is a distraction . . . because the question is not whether the employer's reasons for a decision are 'right but whether the employer's description of its reason is honest.'" *Jones v. Union Pacific Railroad Co.*, 302 F.3d 735 (7th Cir. 2002) Because Plaintiff does not argue, and cannot prove, that Defendant did not honestly believe that Plaintiff threatened McGuire and McKibben, she cannot meet her burden of establishing pretext. *See Hugley v. Art Inst. of Chi.*, 3 F.Supp.2d 900, 908 (N.D. Ill. 1998) ("The issue here is not the adequacy of [defendant's] investigation, the sufficiency of the evidence before the grievance committee, or *even whether the alleged threat actually occurred*.") (emphasis added).

Rather than directly challenge whether the alleged threats against McGuire and McKibben could have been a basis for termination, Plaintiff asserts that they were not in fact the basis for her termination. First, Plaintiff claims "selective policy enforcement," stating Defendant's "failure to discipline younger and non-ADA assemblers for conduct equal to or worse than" Plaintiff's actions leads to the inference of pretext. (ECF No. 65 at 14). When a plaintiff claims to have been disciplined more harshly than other, similarly situated employees based on a prohibited reason, the plaintiff typically must demonstrate that the other employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Antonetti v. Abbott Labs*, 563 F.3d 587, 592 (7th Cir. 2009).

The problem with this line of argument is that Plaintiff's co-workers did not engage in the same kind of behavior that is alleged here. While Plaintiff characterizes her co-workers as "threatening," they did not issue threats. Profanity in the workplace is not worthy of praise, but it was also not an offense warranting termination under the collective bargaining agreement. (ECF No. 56-3 at 239–40). If profanity falls under the umbrella of "conduct and attitude," it does not even call for a written warning on the first offense. (*Id*. at 243, 245). Plaintiff may subjectively feel that her co-workers' conduct was "equal to or worse than" her own, but the policies and rules governing Plaintiff's employment disagree. Since Plaintiff's conduct is categorically different from that of her co-workers, any difference in Defendant's response cannot be evidence of pretext.

Alternatively, Plaintiff seeks to raise doubt as to the basis for her termination by pointing to what she describes as "shifting explanations for termination." Specifically, Plaintiff points out what she perceives to be differences between her termination paperwork and information produced by Defendant during discovery in this case. These differences, Plaintiff asserts, could lead a reasonable jury to find that Defendant's "articulations [were] without merit and their actions were

motivated by [Plaintiff's] disability and their perception of her as being disabled." (ECF No. 65 at 16).

To be sure, shifting and inconsistent explanations can provide a basis for a finding of pretext. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003). However, the Court finds at least two problems with Plaintiff's argument. First, Plaintiff points to no change in Defendant's position outside of the context of this litigation. "[L]itigation conduct, even if evasive, says nothing about the authenticity" of Defendant's basis for terminating Plaintiff. *Harris v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 673 Fed. Appx. 537, 541 (7th Cir. 2016). Accordingly, the Court is loath to find pretext based on reasons advanced by counsel.

More importantly, "explanations must actually be shifting and inconsistent to permit an inference of mendacity." *Schuster*, 327 F.3d at 577. Contrary to Plaintiff's assertion, Defendant's explanations have not varied, even when one compares pre- and post-litigation statements. Specifically, in response to Plaintiff's interrogatory request that Defendant "[s]tate with specificity and particularity each and every basis in fact which Defendants contend support their claim that they are not liable to Plaintiff," Defendant stated, "Plaintiff was terminated for legitimate, non-discriminatory reasons set forth in her termination paperwork." (ECF No. 65-9 at 18). Far from contradicting the reasons set forth in the termination paperwork, Defendant's interrogatory responses doubled down on the reasons stated therein. Thus, even if Defendant added an additional threat in response to a later interrogatory, the stated basis for termination remained the same.

The Seventh Circuit has repeatedly stated that courts "do not sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices." *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005). Plaintiff may be right–her statements to McGuire and McKibben might not have

merited termination–but if Defendant genuinely believed differently, it was entitled to act on that belief. *Id*. The Court finds that Plaintiff has failed to demonstrate that Defendant's reasons for her termination were pretextual, and summary judgment will be entered on Plaintiff's disability discrimination claims.

### 3. *ADA Retaliation*

The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination. 42 U.S.C. § 12203(a). Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless. *Squibb v. Mem'l Med. Ctr*., 497 F.3d 775, 786 (7th Cir. 2007). As in the discrimination context, a plaintiff can establish a valid case of retaliation using either the direct or indirect method of proof. *Kersting v. Wal–Mart Stores, Inc*., 250 F.3d 1109, 1117 (7th Cir. 2001). Where, as here, a plaintiff elects to use the indirect, burden-shifting method for retaliation claims, the plaintiff must demonstrate that she (1) engaged in protected activity; (2) was performing her job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *Lloyd*, 552 F.3d at 601. Once a plaintiff satisfies her initial burden, the burden then shifts to the defendant to present a non-invidious reason for the adverse employment action. If the defendant meets this burden, the plaintiff must then demonstrate that the defendant's proffered reason was pretextual. *See Jasmantas v. Subaru–Isuzu Auto., Inc*., 139 F.3d 1155, 1157 (7th Cir. 1998).

Because, as discussed above, Plaintiff cannot demonstrate that Defendant's reasons for her termination were pretextual, she cannot prevail on her ADA retaliation claim. In addition, Plaintiff cannot demonstrate that she engaged in protected activity. Plaintiff is correct that an informal complaint may constitute protected activity. *See Casna v. City of Loves Park*, 574 F.3d 420, 427

(7th Cir. 2009); *Viramontes v. U.S. Bancorp.*, 2011 WL 6780644, at *9 (N.D. Ill. 2011). However, to have a retaliation claim under the ADA, Plaintiff must have complained about disability discrimination. *See Torres v. Weigel Broad. Co.*, 852 F.Supp.2d 1106, 1113–14 (E.D. Wis. 2012). If she did not, then of course Defendant could not have retaliated against her for complaining about disability discrimination. *Id*.

Here, Plaintiff points to no evidence that she ever complained of disability discrimination. The record contains instances where Plaintiff complained of age discrimination and poor treatment by her co-workers, but nothing where she complained that she was discriminated against because of her PTSD. These non-disability related complaints cannot give rise to a claim of retaliation under the ADA. *See*, *e.g.*, *E.E.O.C. v. Orion Energy Sys., Inc.*, 208 F.Supp.3d 989, 1001 (E.D. Wis. 2016). Moreover, while Plaintiff asserts that she informed Defendant of her PTSD diagnosis, merely informing an employer of a disability is not protected activity. *Tate v. Ill. Worker's Comp. Com'n*, 2010 WL 1418400 at *3 (N.D. Ill. April 6, 2010) (collecting cases). The lack of protected activity, then, is another reason why Plaintiff's ADA retaliation claim must fail.

### 4.      *ADEA Discrimination*

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). To recover under a theory of disparate treatment in the ADEA context, "it's not enough to show that age was a motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Id*. (quoting *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)).

"[T]he singular question that matters in a discrimination case [is]: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion,

or other proscribed factor caused the discharge or other adverse employment action.'" *Johnson v. Advocate Health and Hosps. Corp*., 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz*, 834 F.3d at 765). As with the ADA, one method a plaintiff may utilize to present this evidence is the *McDonnell Douglas* framework. *McDaniel v. Progress Rail Locomotive, Inc*., 940 F.3d 360, 367–68 (7th Cir. 2019). "Under this approach, the plaintiff must show evidence that '(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably.'" *Skiba v. Illinois Cent. R.R. Co*., 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Carson v. Lake Cty., Ind*., 865 F.3d 526, 533 (7th Cir. 2017)). "If the plaintiff meets each element of her prima facie case, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id*. at 719–20 (quoting *Carson*, 865 F.3d at 533).

The *McDonnell Douglas* framework "is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's" age or another proscribed factor. *Johnson*, 892 F.3d at 894. "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action because of her age." *Skiba*, 884 F.3d at 720 (quoting *Carson*, 865 F.3d at 533). Accordingly, courts must assess the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself," regardless of whether the court also analyzes the evidence pursuant to *McDonnell Douglas*. *Ortiz*, 834 F.3d at 765.

15

Here, Plaintiff claims that she can demonstrate age discrimination under both the direct method and the *McDonnell Douglas* framework. The Court will address each method in turn.

The direct method requires Plaintiff to offer direct or circumstantial evidence that Defendant's decision to terminate her was motivated by age. *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). Plaintiff identifies three instances that she believes constitute such evidence: (1) the trainer's request that new hires state their age; (2) a statement by her "team lead" that she was too old to train; and (3) statements by her co-workers that she was "old and slow." (ECF No. 65 at 20).

These instances all fail for the same reason: the statements were not made by a decisionmaker. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 730 (7th Cir. 2004). While Plaintiff claims that the team lead was a decisionmaker in that she decided if and when employees would be trained, this claim ignores the fact that a supervisor, upon hearing the team lead's statement, stepped in and said that she "had to rotate based on company policy and know the other stations." (ECF No. 65-1 at 9). Plaintiff admits that, thereafter, she received training on all stations on the Console Line. (ECF No. 65-2 at 17). The team lead, and perhaps other individuals identified as making age-related comments, may have been senior to Plaintiff, but none were in a decision-making role for the purposes of the ADEA.

The comments by Plaintiff's co-workers are only relevant if those individuals had a "singular influence" over a decisionmaker and "used that influence to cause the adverse employment action;" the so-called cat's paw theory.[4] *Martino*, 574 F.3d at 452. Plaintiff, however,

---

[4] "Cat's paw" is a reference to the 17th Century fable "The Monkey and the Cat". The fable tells a story of a monkey who persuades a cat to pull chestnuts from the embers of a fire, only to take the chestnuts and leave the cat nursing a burnt paw. https://en.wikipedia.org/wiki/The_Monkey_and_the_Cat; http://www.read.gov/aesop/076.html.

does not assert that the cat's paw theory applies. Accordingly, the Court finds that Plaintiff has failed to demonstrate direct evidence of age discrimination.

Turning to the *McDonnell Douglas* methodology, the Court discerns two separate ADEA claims raised by Plaintiff: one for discriminatory failure to train, and another for wrongful termination. To make out a prima facie case of discriminatory failure to train, Plaintiff must demonstrate: (1) that she is a member of a protected group; (2) that Defendant provided training to its employees; (3) that she was eligible for training; and (4) that she was not provided training under circumstances giving rise to an inference of discrimination, i.e., that she was denied training given to other similarly situated employees who were not members of the protected group. *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998). Plaintiff has satisfied the first three requirements. However, the Court finds no evidence to satisfy the fourth.

The failure to train claim hinges entirely on the statements, particularly the statement by Plaintiff's team lead that she was not being trained because she was too old. What is missing, however, is any evidence that Plaintiff received less training than her co-workers. Instead, the only evidence in the record comparing training levels across all third shift Console Line employees shows that Plaintiff had as much, and in most cases more, training on each of the Console Line stations than all her co-workers other than the team lead. (ECF No. 56-3 at 247). Plaintiff does not meaningfully dispute the training information offered by Defendant. (ECF No. 65-2 at 11) (noting only that the training sheet "does not explain the evaluation nor establish the method used to reach the evaluation"). The Court cannot find, as a matter of law, that Plaintiff has suffered a discriminatory failure to train when, in fact, she was one of the best trained individuals on her shift. *See Durkin v. City of Chi.*, 341 F.3d 606, 611 n.2 (7th Cir. 2003) (finding the failure to train analysis inapposite where plaintiff received training).

Plaintiff's wrongful termination claim fares no better. Assuming Plaintiff can demonstrate a prima facie case for age discrimination, her claim fails for the same reason her ADA discrimination claim fails: she cannot show that the stated reasons for her termination were pretextual. Plaintiff has presented no evidence that would cause a reasonable jury to doubt the sincerity of Defendant's belief that Plaintiff had verbally threatened not one, but two people in the presence of management. Plaintiff's ADEA discrimination claim, then, cannot survive summary judgment.

### 5.      *ADEA Retaliation*

Plaintiff again relies on the *McDonnell Douglas* methodology to prove retaliation under the ADEA, so the standard is the same as her other claims. To prove retaliation under the indirect method, Plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006). If Plaintiff establishes a prima facie case, the burden of production shifts to Defendant to articulate some nondiscriminatory reason for its employment action. *Id*. at 663. Then, if Defendant meets its burden, the burden shifts back to Plaintiff to demonstrate that Defendant's reason is pretextual. *Id*.

Plaintiff's retaliation claim under the ADEA is at least more meritorious than her claim under the ADA, if only just. Unlike claims of disability discrimination, the record contains instances where Plaintiff complained about age discrimination. Thus, the Court finds that Plaintiff can make out a prima facie case for ADEA retaliation.

But this is where the good news ends for Plaintiff. Once again, her prima facie case runs headlong into the bridge abutment that is pretext. TOMMY BOY (Paramount Pictures 1995). Plaintiff

can no more show pretext in the context of ADEA retaliation than she can for any of her other claims. Therefore, summary judgment in Defendant's favor is appropriate.

**6.      *Hostile Work Environment***

For a plaintiff to prevail on a hostile work environment claim, she must show that: "(1) she was subject to unwelcome harassment; (2) the harassment was based on her [age or disability]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005) (citing *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)). "A hostile work environment is one that is both objectively and subjectively offensive." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." *Id.* at 677–78 (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004)). Even insults specifically referencing age do not necessarily rise to the level of actionable harassment. *See id.* at 678 ("examples of boorish behavior" are not necessarily "actionable age harassment"). Mere "personal animosity or juvenile behavior" by coworkers is similarly insufficient. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012) (quoting *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666 (7th Cir. 2005)).

First, the Court finds no evidence whatsoever showing a hostile workplace based on Plaintiff's PTSD. To the extent that offensive comments were made to Plaintiff, they were made by individuals that she admits were never told about her disability. (ECF No. 56-3 at 107) ("No, I did not talk to anyone about . . . my PTSD."). Moreover, none of the identified statements are

either explicitly, or even implicitly, ableist in nature. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (1999) ("The complained of conduct must have either a . . . racial character *or purpose* to support a Title VII claim.") (original emphasis). Thus, the Court finds no basis to conclude that Plaintiff experienced a hostile work environment based upon her disability.

With respect to her hostile work environment under the ADEA claim, Plaintiff has failed to present evidence establishing employer liability, and her hostile work environment claim fails on this basis alone. The Supreme Court has held that an employer "may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," and when the harassment culminates in such a tangible employment action. *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). In other words, an employer is strictly liable when a supervisor performs a tangible employment action against an employee. *Id.* at 424. As discussed above, Plaintiff has not identified any harassment at the hands of supervisors, and therefore cannot prevail on that theory. Indeed, the one supervisor that heard an age-related comment immediately chastised the team lead and assured that Plaintiff received full training.

Alternatively, if the harassing employee is a coworker rather than a supervisor, "the employer is liable only if it was negligent in controlling working conditions." *Id.*; *see also id.* at 448–49 (listing examples where an employer may be negligent in failing to prevent harassment from taking place). Plaintiff has failed to put forth any evidence of negligence on the part of Defendant. The designated evidence shows two formal complaints of age discrimination made by Plaintiff: one on October 29, 2018, and the second on February 15, 2019. Plaintiff admits that, after the October 29, 2018, complaint, she received the training she claimed had been withheld.

Following the February 15, 2019, complaint, Plaintiff had a meeting with Defendant's Director of Team Member Relations. The evidence seems to reflect, then, that Defendant took Plaintiff's complaints seriously. Moreover, there is no evidence in the record showing that any age-related harassment continued after Plaintiff's complaint. There is no date assigned to the more-than-two-but-less-than-ten statements, so it is impossible for Plaintiff to demonstrate that they continued after her complaints, or that Defendant failed to take steps to mitigate the harassment.

Plaintiff's hostile work environment claim also fails on the merits. Crediting the high end of Plaintiff's estimate on the number of age-related comments, she endured less than one per month. No reasonable jury could conclude that harassment was "pervasive" at this frequency. *See Racicot*, 414 F.3d at 677–78. Nor was the harassment severe. While no one would consider the co-workers' statements polite, calling someone "old and slow" falls far short of the kind of severity necessary to survive summary judgment. *Id*. at 676 (statements that plaintiff "shouldn't be working at her age" and that "if [she] was younger, [she] could pick up the boxes when heavy shipments arrived at the store" not severe enough to demonstrate a hostile work environment). Summary judgment in favor of Defendant is appropriate.

**C.     Conclusion**

For the foregoing reasons, Plaintiff's Amended Motion to Correct Scrivener's Errors (ECF No. 69) is GRANTED. Defendant's Motion for Summary Judgment (ECF No. 54) is also GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on April 19, 2021.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT